UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY PAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV2085SNLJ |
| ) | |
| FIFTH THIRD BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff originally filed this multicount action in the Circuit Court for St. Louis County and defendant removed to federal court on or about December 20, 2007. Plaintiff brings this action in connection with a debt she allegedly owes regarding an automobile lease. Plaintiff contends that the debt is not owed and that defendant falsely reported said debt to third-party credit bureaus. She asserts that the false reporting of this debt has detrimentally affected her credit rating and directly resulted in the ultimate failure of her business. She asserts claims for common-law fraud (Count I); violation(s) of Missouri's Merchandising Practices Act (MMPA), §407.020 *et. seq.* R.S.Mo. (Count II); and intentional interference with a credit expectancy (Count III). This matter is before the Court on the defendant's motion for summary judgment (#19), filed February 17, 2009.[1] All responsive pleadings have now been filed and the matter is ripe for disposition.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as

---

[1]Also pending before the Court is plaintiff's motion to strike additional facts (#29), filed April 1, 2009.

not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman

v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999).  However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy.  Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment."). Thus, the nonmoving party cannot rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d. 953, 957 (8th Cir. 1995).

Before addressing the merits of the summary judgment matter, the Court must first address the matter of the plaintiff's affidavits on behalf of herself and her daughter, Nicole Smith. In evaluating the merits of a summary judgment motion, and opposition to it, affidavits filed by the parties must meet the requirements of Rule 56(e) Fed.R.Civ.P.  A court can "consider only admissible evidence and [must] disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact."  Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 801 (8th Cir. 2004 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003). Furthermore, an affiant's belief as to certain facts may not be considered on summary judgment when that belief is not based on personal knowledge.  Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d. 1361, 1367 (8th Cir. 1983).  An affidavit will also not be considered, or parts will be stricken, when the

affiant's belief as to certain facts is not based on personal knowledge, but on hearsay statements of others. "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." Jenkins v. Winter, 540 F.3d. 742, 749 (8th Cir. 2008) *quoting* Brooks v. Tri-Systems, Inc., 425 F.3d. 1109, 1111 (8th Cir. 2005).

Post-deposition affidavits are particularly subject to close scrutiny. It is well-established in the Eighth Circuit that an affidavit filed in opposition to a summary judgment motion that directly contradicts earlier deposition testimony is insufficient to create a genuine issue of material fact. Camfield Tires, Inc., at 1362; *see*, Popoalii v. Correctional Medical Services, et. al., 512 F.3d. 488, 498 (8th Cir. 2008).

> "If an additional affidavit simply restates information already contained in deposition testimony or elaborates on information already conveyed, then the district court should consider the affidavit. Contradictory supplemental affidavits are a different matter. We have held that `[i]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.' Post-deposition contradictory affidavits are admitted only when the prior deposition testimony shows confusion, and the subsequent affidavit helps to explain the contradiction."

Popoalii, at 498 (internal citations omitted). The Eighth Circuit has cautioned, however, that district courts "must use extreme care in examining such issues and only grant summary judgment where `the conflicts between the deposition and affidavit raise only sham issues.'" City of St. Joseph, Mo. v. Southwestern Bell Telephone, 439 F.3d. 468, 476 (8th Cir. 2006) *quoting* Camfield Tires, at 1366. A reviewing court should not strike an affidavit when the affiant attests to confusion at his/her deposition or where the affiant needs to explain certain portions of his/her deposition that are unclear. City of St. Joseph, at 476.

4

A reviewing court should initially determine whether the deposition testimony and subsequent affidavit(s) are actually in conflict. City of St. Joseph, at 476. Consideration should then be given as to whether the deposition testimony reflects confusion on the part of the deponent/affiant, and the post-deposition affidavit is an attempt to explain the confusion or contradiction between the deposition testimony and the post-deposition affidavit(s). City of St. Joseph, at 476. Finally, the reviewing court may also examine all the circumstances surrounding the filing of the post-deposition affidavit(s), including the timing of the filing of the affidavit, in determining whether it is a sham. City of St. Joseph, at 476.

Upon careful consideration of the pleadings, the plaintiff's affidavit, Nicole Smith's affidavit[2], and the exhibits submitted including portions of the plaintiff's and Ms. Smith's deposition testimonies, the court agrees with the defendant that the plaintiff's and Ms. Smith's affidavits are sham affidavits and will not be considered on summary judgment. Both of these affidavits directly contradict their deposition testimony, and the objective documentation material to this case, and they contain numerous conclusionary statements of belief based upon inadmissible hearsay and in violation of the parol evidence doctrine.

Neither of the affiants, in their post-deposition affidavits, claim confusion at the time of the depositions or any misunderstandings requiring further explanation. Rather, they simply state that someone at the non-defendant dealership told them that monies paid at the time of the lease would be used to offset the lease balance. Furthermore, Ms. Smith attests that an unidentified person allegedly representing the defendant told her that no payments were due on the subject lease. Finally, the plaintiff attests that at the conclusion of a prior state court proceeding involving the subject lease "the court specifically advised the attorney for Fifth Third that the debt was not

---

[2]Nicole Smith is the plaintiff's adult daughter.

5

to be included on the plaintiff's credit report, and the attorney indicated agreement it would not be so reported." Plaintiff's Affidavit, Exhibit 23-2.

Firstly, as the plaintiff has admitted throughout her deposition, and as evidenced by all documentation before the Court, she and she alone signed all the lease papers; thus, any personal agreement between her and her adult daughter as to the payments on the lease and who would be responsible for said payments is immaterial to this lawsuit. Secondly, both the plaintiff and Ms. Smith have testified under oath that the plaintiff did not make any payments on the lease, and Ms. Smith made only three (3) payments on a car lease which required in writing thirty-nine (39) payments of $551.64. At her deposition, plaintiff clearly testified that she had no conversation with anyone at the dealership (Dick Dean Kirkwood) about payments on the lease, or any remaining loan amount owed on the car (Sebring) being traded in, or any payment at the time of entering into the lease constituting a credit on the lease. Plaintiff's Deposition, pgs. 143-145. She testified that she did not know whether any discussion (allegedly between her daughter and the dealer's personnel) regarding payments owed were in connection with the lease or the outstanding loan on the Sebring. Plaintiff's Deposition, pg. 152-53. Plaintiff clearly testified at her deposition that she did not ask any questions about the lease nor read the lease before signing it. Plaintiff's Deposition, pgs. 140-41, 156-57. Throughout her deposition, plaintiff testified that any information she had regarding the lease or the trade-in of her daughter's car came from her daughter. Plaintiff's Deposition, pgs. 140-42, 143-45, 147-49.

Now in her affidavit, plaintiff claims to have had direct conversations with unknown individual(s) at the car dealership telling her that no payments were due under the lease, and that "[b]ased on the payments made at the time the lease was entered into, and the value of the car at the time it was repossessed by Fifth Third Bank, the payment obligations under the lease were

satisfied." This directly contradicts plaintiff's deposition testimony that 1) she had no direct conversations with anyone at the dealership regarding the lease terms, the trade-in of the Sebring, credit for any monies paid at the time of the lease, or that no payments would be due on the lease for the first year and a half. Plaintiff testified unequivocally at her deposition, and her testimony demonstrates no confusion or uncertainty regarding the questions asked or the answers given. In addition, it is extremely suspect that her affidavit was submitted in March 2009, three (3) months after the deposition, and only in response to the defendant's summary judgment motion.

For these reasons, the Court will not consider the plaintiff's affidavit (#23-2) submitted on March 8, 2009.[3]

As for Ms. Smith's affidavits[4], it too is considered to be a sham affidavit for similar reasons. Ms. Smith clearly testified at her deposition that only her mother signed the lease agreement. Deposition of Nicole Smith, Exhibit #20-5, pgs. 16-17, 22. Ms. Smith testified that her mother (plaintiff) did not read the lease before signing it. Smith Deposition, pg. 22. She testified that she did not explain any of the lease terms to her mother before her mother signed it. Smith Deposition, pg. 35. She testified that she made only two (2) payments on the lease prior to it being repossessed. Smith Deposition, pgs. 41-45.[5] Ms. Smith testified that she did not know

---

[3]As for the matter of the state court "directive", this contradicts the affidavit of the attorney who represented the defendant in the state court matter, contradicts the submitted exhibit of the state court's order upon resolution of the state litigation (Defendant's Exhibit 20-8 Affidavit of Anne Konold and copy of Civil Order in <u>Fifth Third Bank v. Shirley Page</u>, Case No. 03AC-0282525, dated June 23, 2004), and her own daughter's deposition testimony (Defendant's Exhibit 20-5, pgs. 95-96). And in any event, the state court "directive" is altogether irrelevant.

[4]Both parties have filed affidavits executed by Nicole Smith; *see* Plaintiff's Exhibit #23-3 and Defendant's Exhibit #27-5. For purposes of judicial efficiency and clarity, the Court will refer to Plaintiff's Exhibit #23-3 as Smith Affidavit A, and Defendant's Exhibit #27-5 as Smith Affidavit B.

[5]It is unclear but it appears that a third lease payment was also made by Ms. Smith.

7

the amount of the outstanding debt on the Sebring. Smith Deposition, pgs. 13-14, 27. Ms. Smith testified that she was unaware of the trade-in value for the Sebring at the time of the lease execution. Smith Deposition, pgs. 24-25, 29, 34.

In Smith Affidavit A, Ms. Smith attests that "[b]ased on the payments made at the time the lease was entered into, and the value of the car at the time it was repossessed by Fifth Third Bank, the payment obligations under the lease were satisfied." In her second affidavit (Smith Affidavit B), Ms. Smith attests that "I made no more than three monthly payments to Fifth Third Bank, the sum of which did not cover the balance on the Lease." Ms. Smith's affidavits not only contradict each other, but Smith Affidavit A directly contradicts her deposition testimony regarding complete lack of knowledge as to the debt owed on the Sebring at the time of the lease execution, or the trade-in value ultimately given to the Sebring at the time of the lease execution. Ms. Smith testified unequivocally at her deposition, and her testimony demonstrates no confusion or uncertainty regarding the questions asked or the answers given. In addition, it is extremely suspect that her affidavit filed by the plaintiff (her mother) was submitted in March 2009, three months after her deposition, and only in response to the defendant's summary judgment motion.

Finally, both affidavits are replete with statements allegedly made by personnel associated with Dick Dean Kirkwood and/or the defendant regarding payments owed and due under the subject lease; and/or "credit" towards the lease pursuant to the trade-in of the Sebring and monies paid by the plaintiff at the time of the execution of the lease. Both plaintiff and Ms. Smith testified extensively throughout their depositions that the lease agreement fails in any manner to evidence these statements, and that neither of these women have any written documentation whatsoever which purports to evidence these statements or amend the terms of the lease agreement. Plaintiff's Deposition, pgs. 161-164; Smith Deposition, pgs. 27-34, 67-68. These

8

alleged oral statements are not only inadmissible hearsay but are barred by the parol evidence rule. The parol evidence rule precludes admission of oral evidence used to vary or contradict the terms of an unambiguous and complete written instrument untainted by fraud, mistake, accident, or erroneous omission. North American Savings Bank v. Resolution Trust Corp., 65 F.3d. 111, 114 (8th Cir. 1995); Mid-Rivers Mall, L.L.C. v. McManmon, 37 S.W.3d. 253, 255 (Mo.App. 2000); CIT Group Sales/Sales Financing v. Lark, 906 S.W.2d. 865, 868 (Mo.App. 1995). The parol evidence rule is a substantive rule justified on two premises: 1) a written document is more reliable and accurate than fallible human memory, and 2) allowing extrinsic oral evidence to vary the written terms of the document opens the door to perjury. *See*, Whitehill v. Whitehill, 218 S.W.3d. 579 (Mo.App. 2007); CIT Group Sales/Sales Financing, at 868 *citing* Jake C. Byers, Inc. v. J.B.C., Inv., 834 S.W.2d. 806, 812 (Mo.App. 1992). If a contract appears to be complete on its face, it is conclusively presumed to be the parties' final and complete agreement. Mid-Rivers Mall, at 255-56; CIT Group Sales/Sales Financing, at 868. The existence of a merger clause is a "strong indication on the face of the contract that the writing is intended to be complete." CIT Group Sales/Sales Financing, at 868 (internal citations omitted).

As will be detailed further, the lease agreement is a wholly integrated document unambiguous in its terms as to monthly payments and duration of payments. The lease contains a merger clause clearly stating that the lease agreement constitutes the parties' entire agreement and cannot be modified or amended except in writing and upon mutual consent. Plaintiff does not allege any false inducement to execute the lease, any duress to execute the release, any mistake in the lease arrangement that she was aware of upon entering into the lease. Both she and her daughter have clearly testified that plaintiff failed to read the lease before signing it, failed to discuss the lease terms with any of the dealership's personnel (or defendant's personnel) prior to

9

signing the lease agreement, and failed to ask any questions of the dealership's personnel (or defendant's personnel) prior to signing the lease agreement. Thus, the Court will not consider any part of the plaintiff's and/or Ms. Smith's affidavits that are barred by the parol evidence rule.

Having addressed the matter of the plaintiff's and Ms. Smith's affidavits, the Court finds the following to be the facts material and relevant to the issues raised in the summary judgment motion.

On or about June 13, 2009 plaintiff executed a lease for a 1996 Toyota Four Runner owned by Dick Dean Kirkwood (the Dealer) for which defendant Fifth Third was the Lessor. Defendant's Exhibit 1. Although the car was for the sole use and possession by the plaintiff's adult daughter, Nicole Smith, only the plaintiff was the signatory on the lease. Furthermore, although plaintiff and her daughter had a personal arrangement wherein Ms. Smith was to make all payments on the lease, only plaintiff is named on the lease, and only plaintiff signed the lease. Defendant's Exhibit 1. Defendant was never informed in writing of the personal arrangement between the plaintiff and her daughter as to responsibility for the lease payments. Smith Deposition, pg. 69.

Plaintiff did not negotiate any of the terms of the lease with the dealer or the defendant. Plaintiff's Deposition, pgs. 143, 144-45; Smith Deposition, pg. 17. Plaintiff did not read the lease document, or any other documents in connection with the lease, prior to signing the lease. Plaintiff's Deposition, pgs. 156-58; Smith Deposition, pg. 22.[6] Plaintiff did not discuss the terms of the lease with her daughter until some later date after she had signed the lease. Plaintiff's Deposition, pgs. 145, 148.

---

[6]Although not material to the significant legal issues in this lawsuit since Ms. Smith is not a party to this lawsuit nor a party to the lease, Ms. Smith also testified that she did not read the lease in detail prior to the plaintiff signing it. Smith Deposition, pgs. 33-34.

At the time of the lease execution, Ms. Smith owned a 1996 Chrysler Sebring with an outstanding debt obligation owed to Chrysler Financial.[7] Plaintiff's Deposition, pg. 13. Neither plaintiff nor Ms. Smith knew the actual amount of the outstanding debt on the Sebring. Plaintiff's Deposition, pgs. 145-46; Smith Deposition, pgs. 13-14, 19, 25, 27. At the time of the lease execution, neither the plaintiff nor Ms. Smith knew the actual trade-in value that the Dealer was going to give the Sebring upon paying off the outstanding debt on it. Plaintiff's Deposition, pgs.144-45; Smith Deposition, pgs. 18, 25-26, 29. At the time of the execution of the lease, Ms. Smith did not explain the payment structure of the lease to the plaintiff. Smith Deposition, pgs. 35-36.

At the time of the execution of the lease, along with the trade-in of the Sebring, plaintiff issued a check in the amount of $5000 payable to Dick Dean Kirkwood. Plaintiff's Deposition, pgs. 149, 150-51; Affidavit of David Zor.

Plaintiff, based upon information relayed to her by her daughter, believed that the value of the trade-in (of the Sebring) and the $5000.00 check to the Dealer were going to be forwarded to the defendant and used to credit the lease account. Plaintiff's Deposition, pgs. 148-49, 150. In actuality, both the value of the trade-in allowance on the Sebring, as well as plaintiff's $5000.00 check were used in total to pay off the outstanding debt obligation on the Sebring. Zor Affidavit. Pursuant to the written terms of the lease, as of the time of execution, neither the trade-in value of the Sebring nor any portion of the $5000.00 check were used to credit the lease account for the 1996 Toyota Four Runner. Defendant's Exhibit 11- Deposition of Steve Bosse, pgs. 10-11; Zor Affidavit; Defendant's Exhibit 1- Lease, §33(A)(I), §33(B)(I). Pursuant to the terms of the lease,

---

[7]It is unclear from the record before the Court but it appears that Ms. Smith actually co-owned the Sebring with a former boyfriend identified as Collin Holloway. Plaintiff's Deposition, pgs. 12-13, 20.

defendant issued a check payable to the Dealer for $28,356.36. Zor Affidavit. The Dealer, in turn, issued a check to Chrysler Financial for $13,141.22. Zor Affidavit.

Pursuant to the terms of the lease, plaintiff was required to make thirty-nine (39) monthly payments of $551.64 to the defendant. Defendant's Exhibit 1 - Lease, §30. Plaintiff did not make a single payment of $551.64 or any amount to defendant pursuant to the lease. Plaintiff's Deposition, pg. 158; Smith Deposition, pgs. 36-37; 66-67. Prior to the defendant's repossession of the Four Runner in December 2001, Ms. Smith made only three (3) payments, between July 2001 and December 2001, in connection with the lease of the Four Runner.[8] Smith Deposition, pgs. 37, 44; Defendant's Exhibit 5 - Leasing History Report, 53-SP-0003-4.

Neither plaintiff nor Ms. Smith have in their possession any documents showing that the $5000.00 check and the value of the trade-in was to be applied to payments due and owing on the lease. Plaintiff Deposition, pg. 160-63; Smith Deposition, pg. 28.

At the time of the repossession of the Four Runner in December 2001, Ms. Smith had possessed the motor vehicle for approximately two and one-half years (2 ½), the plaintiff had not made any payments pursuant to the lease terms, and Ms. Smith had made three (3) monthly payments shortly before the repossession. Defendant's Exhibit 6 - Defendant's Collection Management Notes Report, 53-SP-0085-86.

On or about November 2003, defendant brought suit against the plaintiff in St. Louis County Associate Circuit Court to recover the remaining debt on the subject lease account: <u>Fifth</u>

---

[8]Ms. Smith could only recall making two (2) payments; however, the defendant's corporate file regarding the subject lease indicates that only three (3) payments were made in connection with the subject lease, and these three (3) lease payments were made sometime between July 2001 and December 2001.

Third Bank v. Shirley R. Page, Cause No. 03-AC-28252 S. Affidavit of A. Konold.[9] The state court action was ultimately dismissed without prejudice because Fifth Third Bank did not have a witness ready to proceed to trial. Konold Affidavit. Aside from the dismissal without prejudice of the state court action, no other written or oral order was entered by the state court. Konold Affidavit; Exhibit A to Konold Affidavit - copy of state court order entered in the case of Fifth Third Bank v. Shirley R. Page, Cause No. 03-AC-28252S, dated June 23, 2004. Ms. Konold attests that there was no discussion concerning the reporting of the debt owed to the credit-reporting agencies, and no order of the court to defendant to alter its reporting of the plaintiff's debt to the applicable credit-reporting agencies. Konold Affidavit. Plaintiff attests that "the court specifically advised the attorney for Fifth Third Bank that the debt was not to be included on the plaintiff's credit report, and the attorney indicated agreement it would not be so reported." Plaintiff's Affidavit, #23-2. Ms. Smith has testified at her deposition that she heard the state court judge dismissed the case without prejudice. Smith Deposition, pg. 93, 95. She further testified that there was some type of exchange between the plaintiff and the state court judge regarding the plaintiff's credit and that the state court judge told her mother that if Fifth Third reported the debt, plaintiff could "sue them". Smith Deposition, pgs, 95-96. Finally, Ms. Smith testified that the state court judge did not give any written order regarding the debt to any of the parties' attorneys. Smith Deposition, pg. 96. The written order filed in the state court action dismissing the case without prejudice makes no reference whatsoever to the reporting of the debt, the effect of the debt on the plaintiff's credit, or any admonition to Fifth Third Bank not to report the debt to the applicable credit-reporting agencies. Konold Affidavit - Exhibit A.

---

[9]Ms. Konold was the attorney representing Fifth Third in the state court action.

13

Sometime in 2006, plaintiff leased space at #14 Village Square to operate a church-related business known as "The Hebrew Boys, L.L.C." (hereinafter referred to as simply Hebrew Boys). Plaintiff entered into the lease at 14 Village Square prior to knowing that defendant had reported the lease debt to the applicable credit bureaus. Plaintiff's Deposition, pgs. 84-85. Ultimately, plaintiff was unable to make the lease payments and the business closed. Defendant's Exhibits 9 and 10 - Plaintiff's discovery responses.

Plaintiff has filed this multicount action alleging the defendant 1) committed fraud by making false statements to third party credit bureaus that she had a long-outstanding debt obligation in connection with the lease for the 1996 Toyota Four Runner and that these third party credit bureaus and other lending institutions relied upon such false statements in making decisions regarding extending credit to her (Count I); 2) violated the Missouri Merchandising Practices Act (MMPA) because defendant "used deception, fraud, false pretense, false promise, committed an unfair practice, and concealed and suppressed a material fact" in reporting the debt obligation in connection with the lease for the 1996 Toyota Four Runner (Count II), and 3) intentionally interfered with plaintiff's credit expectancy by reporting the debt obligation in connection with the lease for the 1996 Toyota Four Runner.

Defendant contends that it is entitled to summary judgment on all of plaintiff's claims for the simple reason that plaintiff has no admissible evidence showing that she satisfied her debt to the defendant and that the reporting of her lease account to the credit bureaus was false. Furthermore, defendant argues that plaintiff's fraud claim must fail because she cannot show that she directly relied upon any alleged misrepresentation made by Fifth Third and was damaged by such reliance. Defendant argues that plaintiff's MMPA claim must fail because defendant did not employ any deceptive or unlawful practice (in reporting the delinquent lease account) and because

14

plaintiff has suffered no "ascertainable loss" as defined under the MMPA. Defendant further argues that plaintiff's intentional interference claim must fail because plaintiff cannot meet her burden in establishing absence of justification in defendant's reporting of the lease account. Finally, defendant argues that all of the plaintiff's claims are preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§1681h(e) and 1681t(b)(1)(F).

When reviewing the facts, as determined by the admissible evidence before the Court, in a light most favorable to the plaintiff, the Court determines that defendant is entitled to summary judgment on all claims because plaintiff has failed to meet her threshold burden that she had fully satisfied all of the terms of the lease agreement and that the reporting of a delinquent lease account was false. *See*, Beyer v. Firstar Bank, N.A., 447 F.3d. 1106 (8th Cir. 2006).

It is undisputed that plaintiff signed a lease for a 1996 Toyota Four Runner in June 1999 without reading same, or discussing the details of same with the dealership personnel or even her own daughter (for whom she was acquiring the car). It is undisputed that the terms of the lease clearly and unequivocally required plaintiff, and only the plaintiff, to make thirty-nine (39) monthly payments in the amount of $551.64 to the defendant. It is undisputed that plaintiff made no payments whatsoever from June 1999 to December 2001 (when the car was repossessed) to defendant pursuant to the lease agreement. It is undisputed that at the time of the lease plaintiff's daughter, Nicole Smith, had made only three (3) payments on behalf of her mother to the defendant.

Plaintiff expends a great deal of time and energy arguing that unidentified personnel at the dealership told her daughter that the trade-in of the daughter's car (a 1996 Chrysler Sebring) and a check plaintiff wrote for $5000.00 would be used to "credit" payments on the lease. As already noted by the Court, these unsubstantiated statements by unidentified personnel at the dealership,

15

as well as statements allegedly made later by unidentified personnel of the defendant to Ms. Smith regarding "credit" of the Sebring trade-in and the $5000.00 check, constitute inadmissible hearsay and are barred by the parol evidence rule. Factually, it is undisputed that the check the plaintiff wrote was to Dick Dean Kirkwood, not the defendant, and the dealer's records show that the money was used towards paying off the outstanding debt owed on the Sebring, not the 1996 Toyota Four Runner. Furthermore, the outstanding debt owed on the Sebring was significantly higher than Ms. Smith believed, and its trade-in value was used in conjunction with the $5000.00 to pay off the outstanding debt owed on the Sebring. Finally, the lease agreement makes absolutely no mention of the $5000.00 payment and/or the Sebring trade-in value as being "credited" towards the lease payments. The lease file and defendant's management personnel have no record of any $5000.00 payment by the plaintiff as a down payment on the Four Runner. The lease agreement contains a merger clause which clearly states that the lease agreement, as written and signed by the plaintiff, constitutes a full integrated contract and that any modifications had to be in writing by mutual consent by both the plaintiff and the defendant. It is undisputed that plaintiff has no written documentation whatsoever evidencing her unsubstantiated assertion that she was not required to make payments on the lease for almost two (2) years by virtue of the $5000.00 check and trade-in of the Sebring. Viewing the evidence in a light most favorable to the plaintiff, she owed approximately $20,000.00 on the lease account when defendant repossessed the car. At most she has only shown that her daughter made approximately $1650.00 in payments between July 2001 and December 2001, an insufficient amount to pay the balance due and owing on the lease account as of December 2001. *See*, <u>Beyer</u>, at 1108. She has no affirmative evidence

from which any reasonable juror could conclude that she had fully satisfied all of the terms of the lease agreement and that the reporting of the lease account as delinquent was false.[10]

"Once a movant for summary judgment has `point[ed] out to the district court that there is an absence of evidence to support' an essential element for which the nonmovant will have the burden of proof at trial, the nonmovant must make a sufficient showing that there is a genuine issue of fact as to that element." Beyer, at 1108 *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). The nonmovant cannot sustain his or her burden by resting on his/her pleadings alone. Celotex Corp., 477 U.S. at 324. Fifth Third has presented evidence in the form of its personnel's admissible affidavits, deposition testimony, and written documentation that the bank at all times correctly reported the status of the plaintiff's lease acccount. Plaintiff has failed to present any evidence which sufficiently demonstrates a material issue of fact disputing the delinquency of the lease account.

Since plaintiff has failed to establish an essential element of all her claims; namely, that the lease account was not delinquent when reported to the credit bureaus, defendant is entitled to

---

[10]It should be noted that in response to the summary judgment motion, plaintiff attempts to alter the substance of her claims. In her complaint, she clearly predicates her claims on the assertion that defendant allegedly made false statements regarding the status of the lease account to credit bureaus and lending institutions. In her responsive pleading, she now attempts to base her claims on the assertion that defendant "improperly handled" the lease transaction. Plaintiff's Memorandum in Opposition (#24). The Court will not allow such a significant change in the substance of the plaintiff's claims at this late date, and will address the merits of the instant summary judgment motion as it relates to the claims as originally pled in the plaintiff's complaint.

17

summary judgment on all claims.[11] Given the Court's findings of fact and conclusions of law, there is no need to address defendant's alternative grounds for summary judgment.

Dated this ___29th___ day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[11]To prevail on her fraud claim, plaintiff had to show that she satisfied all the terms of the lease agreement, and therefore, defendant's reporting of the lease account as delinquent was false. *See*, Dueker v. Gill, 175 S.W.3d. 662, 667 (Mo.App. 2005)(failure to prove any of the requisite elements is fatal to a claim of fraud); Dorsch v. Family Medicine, Inc., 159 S.W.3d. 424, 430-31 (essential elements of fraud claim "must be strictly proven as pleaded"); *see also*, City of St. Joseph, Missouri v. Southwestern Bell Telephone, 2005 WL 6125133, *9 (W.D.Mo. Jan. 7, 2005)(truth of falsity of representation is determined as of time it was made and as of time it was intended to be relied upon), *aff'd* 439 F.3d. 468 (8th Cir. 2006); Blanke v. Hendrickson, 944 S.W.2d. 943, 944 (Mo.App. 1997). The MMPA claim similarly requires a showing of deception, fraud, false pretense, false promise, misrepresentation, unfair practice or a concealment, suppression, or omission of a material fact; furthermore, a MMPA claim requires an "ascertainable loss" as defined by the MMPA. Mattingly v. Medtronic, Inc., 466 F.Supp.2d. 1170, 1173 (E.D.Mo. 2006); Zmuda v. Chesterfield Valley Power Sports, 267 S.W.3d. 712, 716 (Mo.App. 2008). Plaintiff not only lacks any admissible evidence that the lease terms had been satisfied at the time of the lease account being reported as delinquent but lacks admissible evidence that she sustained an "ascertainable loss" since all admissible evidence shows that the plaintiff's funds went to Chrysler Financial, not to Fifth Third. Furthermore, plaintiff has not pleaded an agency relationship between the Dick Dean Kirkwood and defendant; thus, any representations made by the dealer at the time plaintiff entered into the lease agreement cannot be imputed to the defendant. *See*, Clement v. St. Charles Nissan, 103 S.W.3d. 898, 899-900 (Mo.App. 2003)(Plaintiff could recover under the MMPA for additional lease payments because dealer had misrepresented a material term of the lease period at time plaintiff entered into lease arrangement). Finally, as to her intentional interference claim, plaintiff had the burden of establishing the absence of justification. Bruce v. First U.S.A. Bank, N.A., 103 F.Supp.2d. 1135, 1145 (E.D.Mo. 2000) *citing* Bell v. May Dept Stores Co., 6 S.W.3d. 871, 876 (Mo. 1999)(a person is justified in interfering with the credit expectancy of another if by doing so the person is acting to protect his own economic interests). Making a true statement in the course of one's business cannot be the basis for a tortious interference claim, especially if the reporting of same is statutorily required. *See*, 15 U.S.C. §1681s-2; Council Tower Assoc. v. Axis Specialty Ins. Co., 2008 WL 5423442, *4 (E.D.Mo. Dec. 29, 2008) *citing* Stehno v. Spring Spectrum, 186 S.W. 3d. 247, 252-53 (Mo.2006).